# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| KEITH HOBBS and TERRY FABRICANT, individually and on behalf of others similarly situated, | CIVIL ACTION FILE NO. |
| Plaintiffs, | |
| v. | **COMPLAINT – CLASS ACTION** |
| RANDALL-REILLY, LLC and YODEL TECHNOLOGIES, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## Preliminary Statement

1. Plaintiffs Keith Hobbs and Terry Fabricant ("Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Plaintiffs allege that Randall-Reilly, LLC ("Randall-Reilly") commissioned automated and pre-recorded telemarketing calls to Plaintiffs and other putative class members without their prior express written consent.

3.  These calls were made pursuant to an arrangement between Randall-Reilly and Yodel Technologies, LLC ("Yodel Technologies"), a vendor for Randall-Reilly. The calls were made to the Plaintiffs even though counsel for the Plaintiffs had previously alerted Randall-Reilly that Yodel Technologies were making pre-recorded calls in alleged violation of the TCPA on its behalf.

4.  The Plaintiffs and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Randall-Reilly.

5.  A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6.  Plaintiff Keith Hobbs currently resides in this District.

7.  Plaintiff Terry Fabricant currently resides in California.

8.  Defendant Randall-Reilly, LLC is a Delaware limited liability company with its principal place of business in Tuscaloosa, AL and a registered agent of CT Corporation at 641 South Lawrence St., Montgomery, AL 36104.

9. Defendant Yodel Technologies, LLC is a Delaware limited liability company with its principal place of business in Palm Harbor, FL and a registered agent of Gabrielle Walthers, 989 Georgia Ave., 1st Floor, Palm Harbor, FL 34683.

**Jurisdiction & Venue**

10. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiffs allege a nationwide class, which will result in at least one Class member from a different state.

11. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

12. The Court has personal jurisdiction over the defendants because they in nationwide telemarketing conduct, including into this District.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned into this District.

## TCPA Background

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones</u>

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

16.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

19.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

20.     By 2003, telemarketers were calling 104 million Americans every day, abetted by the proliferation of new and more powerful autodialing technology. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

21. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years:

- "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." FCC Chairman Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016) (https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls).

- "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016) (https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf ).

- In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. For every month in the fiscal year, robocalls made up the majority of consumer complaints about Do Not Call violations. *FTC Releases FY 2017 National Do Not Call Registry Data* (December 18, 2017) (https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc).

- In May of 2018 the New York Times reported extensively on the surging number of robocall complaints filed by consumers with the FTC and overall widespread consumer outrage as to the prevalence of illegal telemarketing despite existing law. *See Yes, It's Bad. Robocalls, and Their Scams, Are Surging. Tara Siegel Bernard.* https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

**Factual Allegations**

22. Randall-Reilly provides marketing services to companies, with a specific focus in the automobile industry.

23. To generate new clients, Randall-Reilly relies on telemarketing.

24. In fact, Randall-Reilly has a "Telemarketing Division". *See* https://www.equipmentworld.com/about-randall-reilly/ (Last Visited January 17, 2019).

25. That Telemarketing Division, "offers inbound/outbound services, trade show promotion and reservations, hot lead generation, buying intentions and other services." *Id.*

26. To assist it with those services, Randall-Reilly relies on third parties, such as the co-defendant Yodel Technologies.

27. One of the telemarketing strategies used by Defendants involve the use of automated calls and messages to solicit potential customers.

28. While such technology may save time and money for the Defendants' telemarketing efforts, it violates the privacy rights of the Plaintiffs and putative class.

Calls to The Plaintiffs

29. Plaintiff Hobbs is a "person" as defined by 47 U.S.C. § 153(39).

30. Mr. Hobbs's telephone number, (706) 761-XXXX, is registered to a cellular telephone service.

31. Mr. Hobbs's number is also on the National Do Not Call Registry.

32. Mr. Hobbs was called by Yodel Technologies for Randall-Reilly on December 31, 2018 using the Caller ID number (706) 214-3380.

33. When Mr. Hobbs answered the call, there was a distinctive click and a pause.

34. This click and pause is a telltale sign of a predictive dialer.

35. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

36. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

37. A predictive dialer is an ATDS as that term is defined by the TCPA.

38. After the click and pause, a pre-recorded message played.

39. To identify the calling party, Mr. Hobbs listed to the sales pitch.

40. He was then transferred from Yodel Technologies directly to Randall-Reilly.

41. Mr. Hobbs then terminated the call.

42. Mr. Hobbs wrote to Randall-Reilly to determine if Randall-Reilly asserted that it had his prior express consent to make the call.

43. Randall-Reilly responded, but without any assertion that it had prior express consent to make the call.

44. Mr. Hobbs is not a customer of Defendants and has not consented to receive telemarketing calls prior to the receipt of these calls.

45. Plaintiff Fabricant is a "person" as defined by 47 U.S.C. § 153(39).

46. Mr. Fabricant's telephone number, (818) 266-XXXX, is registered to a cellular telephone service.

47. Mr. Fabricant's number is also on the National Do Not Call Registry.

48. Mr. Fabricant was called by Yodel Technologies for Randall-Reilly on January 2, 2019 and January 11, 2019 using the Caller ID number (818) 629-1632 on the January 2 call and (818) 629-1575 on the January 11 call.

49. When Mr. Fabricant answered the calls there was a distinctive click and a pause.

50. This click and pause is a telltale sign of a predictive dialer.

51. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

52. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

53. A predictive dialer is an ATDS as that term is defined by the TCPA.

54. After the click and pause, a pre-recorded message played.

55. To identify the calling party, Mr. Fabricant listened to the sales pitch.

56. He was then transferred from Yodel Technologies directly to Randall-Reilly.

57. Mr. Fabricant then terminated the call.

58. Mr. Fabricant is not a customer of the Randall-Reilly and has not consented to receive telemarketing calls prior to the receipt of these calls.

59. All of the calls to the Plaintiffs from Yodel Technologies came from different Caller ID numbers.

60. In fact, each call was from a local Caller ID, in hopes that the call recipients would be more likely to answer a call from a local number.

61. Manipulating Caller ID numbers is another telltale sign that the calls were made with automated technology.

62. The Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiffs and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class.

**Randall-Reilly's Liability for Yodel Technologies' Conduct**

63. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

64. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

65. In fact, the Federal Communication Commission has instructed that sellers such as Randall-Reilly may not avoid liability by outsourcing telemarketing to third parties, such as Yodel Technologies:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have

thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

66. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

67. Randall-Reilly is liable for the Yodel Technologies telemarketing calls.

68. First, Randall-Reilly hired Yodel Technologies to originate new business using automated telemarketing calls.

69. In fact, Randall-Reilly participates in the call itself.

70. Yodel Technologies makes the pre-recorded call and then transfers the responses to Randall-Reilly.

71. From there, Randall-Reilly attempts to finalize the sale.

72. Furthermore, Randall-Reilly could have restricted Yodel Technologies, from using automated telemarketing, but it didn't.

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

73. Randall-Reilly knew (or reasonably should have known) that Yodel Technologies was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

74. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

75. Furthermore, here counsel for the Plaintiff *explicitly told* Randall-Reilly that Yodel Technologies was making pre-recorded calls for Randall-Reilly prior to the calls to these two Plaintiffs, yet Randall-Reilly continued its relationship with Yodel Technologies.

76. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

77. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

78. The Class of persons Plaintiffs propose to represent is tentatively defined as:

> All persons within the United States to whom: (a) Defendants and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

79. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

80. The Class as defined above is identifiable through phone records and phone number databases.

81. The potential Class members number at least in the thousands. Individual joinder of these persons is impracticable.

82. The Plaintiffs are members of the Class.

83. There are questions of law and fact common to Plaintiffs and to the proposed Class, including but not limited to the following:

      a.  Whether Defendants violated the TCPA by using automated calls to contact putative class members cellular telephones;

      b.  Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

      c.  Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendants' actions.

84.    The Plaintiffs' claims are typical of the claims of class members.

85.    The Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

86.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

87.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

88.     The Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Violation of the TCPA's Automated Call provisions

89.     The Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

90.     The Defendants violated the TCPA by (a) initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(b).

91.     The Defendants' violations were willful and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiffs request the following relief:

A.     Injunctive relief prohibiting Defendants from calling telephone numbers using an automatic telephone dialing system;

C.     Because of Defendants' violations of the TCPA, Plaintiffs seek for themselves and the other putative Class members $500 in statutory damages per

violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

    D.    An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

    E.    Such other relief as the Court deems just and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

Dated: January 22, 2019    PLAINTIFFS, individually and
on behalf of others similarly situated,

By:

**THE KOVAL FIRM, LLC**

*/s/ Steven H. Koval*
Steven H. Koval
Georgia Bar No. 428905
3575 Piedmont Road
Building 15, Suite 120
Atlanta, GA  30305
Telephone:  (404) 513-6651
Facsimile: (404) 549-4654
shkoval@aol.com