IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KEITH HOBBS, TERRY FABRICANT,    *
and YVETTE GRIFFIN,
                                 *
      Plaintiffs,
                                 *
vs.
                                 *            CASE NO. 4:19-CV-9 (CDL)
YODEL TECHNOLOGIES LLC and UBER  *
TECHNOLOGIES, INC.,              *

      Defendants.                *
_____

O R D E R

Plaintiffs Keith Hobbs, Terry Fabricant, and Yvette Griffin allege that Uber Technologies, Inc. commissioned automated, prerecorded calls to them, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Uber asserts that Hobbs and Fabricant entered user agreements with Uber, that their claims relate to those agreements, and that the agreements require arbitration of their claims. Uber filed a motion to compel arbitration of those claims. Plaintiffs oppose the motion, arguing that Uber waived its right to insist on arbitration and that even if there was no waiver, the claims of Hobbs and Fabricant do not arise out of their agreements with Uber. As discussed below, the Court grants Uber's motion to compel arbitration of the claims of Hobbs and Fabricant (ECF No. 131) but denies Uber's request to stay Griffin's claims.

BACKGROUND

Plaintiffs Keith Hobbs and Terry Fabricant originally brought this action against Randall-Reilly, LLC and Yodel Technologies, LLC, alleging that Randall-Reilly commissioned automated and pre-recorded telemarketing calls to Plaintiffs and others without their consent. *See generally* Compl., ECF No. 1. They later amended the complaint to add Yvette Griffin as a plaintiff and Uber as a defendant. Plaintiffs contend that Uber commissioned automated and pre-recorded calls to Plaintiffs and others without their consent. *See generally* Am. Compl., ECF No. 28. Specifically, Plaintiffs allege that Uber "sells technological services to drivers in exchange for a service fee," that Uber "relies on telemarketing" to "sell these services to prospective drivers," and that one of Uber's telemarketing strategies involves "the use of automated dialers and prerecorded messages to solicit potential drivers to use Uber's services." *Id.* ¶¶ 24-29. Plaintiffs further allege that they received automated telephone calls with prerecorded messages on behalf of Uber, that the purpose of these calls was "to sell Uber's software services" to Plaintiffs, and that Plaintiffs did not consent to receive such calls. *Id.* ¶¶ 34-81. The Complaint does not acknowledge that any of the Plaintiffs had Uber accounts or had any type of agreement with Uber.

Plaintiffs served Uber on June 4, 2019. After being granted an extension of time to answer, Uber filed an answer asserting as one of its affirmative defenses that "Members of the Putative Class are barred from seeking relief in this forum, in whole or in part, because they agreed to arbitrate their claims against Uber." Answer 22, Tenth Affirmative Defense, ECF No. 53; *see also* Am. Answer 22, Tenth Affirmative Defense, ECF No. 64. Although Uber did not specifically assert that the named Plaintiffs' claims were barred by arbitration, it did assert that they consented to receive the communications at issue. Answer 21, Third Affirmative Defense; *see also* Am. Answer 21, Third Affirmative Defense. Shortly after Uber filed its Answer, it served discovery requests seeking Plaintiffs' full telephone numbers and email addresses. Uber also filed a short notice joining Yodel's four pending motions. Plaintiffs retained two expert witnesses and disclosed them to Uber and the other Defendants.

Then, on October 15, 2019, Plaintiffs provided their full telephone numbers and email addresses to Uber.[1] Plaintiffs do not dispute that they did not provide their telephone numbers or email addresses to Uber until October 2019, and they do not dispute that Uber could not have known before then whether any

---

[1] Uber contends that it did not receive this information until October 28, 2019. Plaintiffs assert that they responded on October 15, 2019.

of the Plaintiffs had entered a user agreement with Uber. Within approximately two months after receiving this information from Plaintiffs' counsel, Uber confirmed that Fabricant and Hobbs were registered Uber users and filed the motion to compel arbitration. Between October 15, 2019 and the date of Uber's motion to compel arbitration, the parties agreed to move for an extension of discovery, and Uber issued notices for the depositions of Plaintiffs' experts. After Uber filed its motion to compel arbitration, Plaintiffs did not file a motion for a stay of discovery pending a ruling on the arbitration issue. Before Uber's motion to compel arbitration became ripe, Yodel filed for bankruptcy, and the parties agreed to extend the automatic stay as to the claims against Uber. The Court terminated the motion to compel arbitration but stated that Uber could renew it when the stay was lifted. After the bankruptcy court modified the stay to permit Plaintiffs to proceed with this litigation, the Court lifted the stay of this action and Uber renewed its motion to compel arbitration of the claims of Hobbs and Fabricant. There is no contention that Griffin had an Uber account or that her claims are subject to arbitration.

Uber presented evidence that Fabricant created an Uber account on December 19, 2015 so he could use the Uber App, which "allows the public to request transportation services from independent, third-party transportation providers in their local

area." Gabriel Decl. ¶¶ 3-5, ECF No. 131-2. To complete the registration process, Fabricant had to enter his email address and mobile phone number. *Id.* ¶ 7 & Ex. B. He also had to enter payment information, and the "link payment" screen states, "By creating an Uber Account, you agree to the Terms & Conditions and Privacy Policy." *Id.* ¶ 7 & Ex. D. The screen contains a link to the Terms & Conditions and Privacy Policy. *Id.* The privacy policy states that Uber collects information provided to it by users, including email and phone number. Tonti Decl. Ex. B, User Privacy Statement 1 (July 15, 2015), ECF No. 131-17. It also states that Uber "may use the information" it collects about users to send users "communications we think will be of interest to you, including information about products, services, promotions, news, and events of Uber and other companies." *Id.* at 4. The terms and conditions in effect when Fabricant registered for the Uber App state that the Terms of Use "govern the access or use by you, an individual, from within the United States and its territories and possessions of applications, websites, content, products, and services (the '*Services*') made available in the United States and its territories and possessions by Uber USA, LLC and its subsidiaries and affiliates (collectively, '*Uber*')." Tonti Decl. Ex. A, Terms & Conditions § 1 (Apr. 8, 2015), ECF No. 131-16 ("2015 Terms"). The 2015 Terms state that Uber's "collection and use of personal

information in connection with the Services is as provided in Uber's Privacy Policy." *Id.* The 2015 Terms contain a "Dispute Resolution" section that states: "You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation or validity thereof or the use of the Services (collectively, '*Disputes*') will be settled by binding arbitration between you and Uber . . . . You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or representative proceeding." *Id.* § 6. The Dispute Resolution section states that the "arbitration will be administered by the American Arbitration Association ('*AAA*') in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes . . . then in effect." *Id.*

Uber presented evidence that Hobbs created an Uber account on October 21, 2018 so he could use the UberEATS App, which "enables users and merchants to arrange for the delivery of goods by independent delivery partners in their local area." Medina Decl. ¶¶ 3-5, ECF No. 131-7. To complete the registration process, Hobbs had to provide his mobile telephone number and email address. *Id.* ¶ 7. The last step of the registration process states, "By tapping Next, you agree to Uber's Terms of Use and acknowledge that you have read the

Privacy Policy." *Id.* ¶ 7 & Ex. G.  The screen contains a link to the Terms & Conditions and Privacy Policy.  The privacy policy states that Uber collects information provided to it by users, including email and phone number.  Tonti Decl. Ex. D, User Privacy Statement 4 (May 25, 2018), ECF No. 131-19.  It also states that Uber "may use the information" it collects about users to communicate with users "about products, services, promotions, studies, surveys, news, updates and events." *Id.* at 11.  The terms and conditions in effect when Hobbs registered for the UberEATS App state that the Terms of Use "govern your access or use, from within the United States and its territories and possessions, of the applications, websites, content, products, and services (the 'Services,' as more fully defined below in Section 3) made available in the United States and its territories and possessions by Uber USA, LLC and its parents, subsidiaries, representatives, affiliates, officers and directors (collectively, 'Uber')." Tonti Decl. Ex. C, Terms & Conditions § 1 (Dec. 13, 2017), ECF No. 131-18 ("2017 Terms"). The 2017 Terms state that "Uber's collection and use of personal information in connection with the Services is described in Uber's Privacy Statements." *Id.*  The first page of the 2017 Terms states, in bolded all-caps type: "PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS

THROUGH FINAL AND BINDING ARBITRATION." *Id.* The 2017 Terms contain an arbitration agreement that provides: "By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration, as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else." *Id.* § 2. The arbitration section further states: "You and Uber agree that any dispute, claim or controversy arising out of or relating to . . . these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof . . . will be settled by binding arbitration." *Id.* And it says that the "arbitration will be administered by the American Arbitration Association ('AAA') in accordance with the AAA's Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the 'AAA Rules') then in effect." *Id.*

DISCUSSION

Hobbs and Fabricant assert claims against Uber under the TCPA, which makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone

8

dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Hobbs and Fabricant allege that they did not give prior consent to receive the telemarketing calls from Uber. Am. Compl. ¶¶ 50, 77. Uber asserts as one of its defenses that it had prior express consent to contact Hobbs and Fabricant because they agreed to Uber's terms and privacy policy, which broadly permit Uber to use its users' telephone numbers to communicate with users. Uber further argues that Hobbs and Fabricant agreed to arbitrate any claim arising out of or relating to the Uber terms of use. Hobbs and Fabricant contend that their TCPA claims are not subject to arbitration because they do not arise out of or relate to the Uber terms or their use of Uber's services; Hobbs and Fabricant believe that they would have received telemarketing calls from Uber even if they had not signed up for Uber accounts, provided their personal information to Uber, and agreed to Uber's policy on use of personal information. Hobbs and Fabricant further contend that even if their claims are ostensibly subject to arbitration, Uber waived its right to insist on arbitration. The Court addresses each issue in turn.

## I.   Are Plaintiffs' Claims Subject to Arbitration?

As discussed above, Hobbs and Fabricant agreed to arbitrate any dispute, claim or controversy arising out of or relating to

the Uber terms.  Plaintiffs argue that there can be no doubt that their TCPA claims do *not* arise out of or relate to the Uber terms, so the arbitration clause in the Uber terms clearly does not cover their TCPA claims.  The Court understands that arbitration cannot be required if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).  But if there is a doubt about coverage, and if the parties delegated the threshold issue of arbitrability to an arbitrator, then an arbitrator and not a court must determine whether the arbitration agreement applies to the parties' particular dispute. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (explaining that if the parties' agreement clearly and unmistakably "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue"). The Uber terms clearly and unmistakably delegate the threshold issue of arbitrability to an arbitrator.[2]  The remaining question

---

[2] The parties to the Uber terms agreed to follow "the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes."  2015 Terms § 6; 2017 Terms § 2.  The consumer arbitration rules state: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Consumer

is whether the arbitration clause in the Uber terms is susceptible of an interpretation that covers the TCPA claims of Hobbs and Fabricant.

Plaintiffs contend that the TCPA disputes of Hobbs and Fabricant clearly do not arise out of or relate to Uber's terms (and are thus not covered by the arbitration clause) because Plaintiffs believe that Uber would have made telemarketing calls to them even if they had not agreed to Uber's terms of use. Plaintiffs also assert that, although they allege that Uber lacked prior express consent to call them, Uber will ultimately have the burden to prove that it did have prior written consent to contact Hobbs and Fabricant to avoid liability on the TCPA claims, and that under these circumstances their TCPA claims could not possibly arise out of or relate to the Uber user agreements. The parties did not cite, and the Court did not locate, binding authority squarely addressing whether a TCPA claim arises out of or relates to a user agreement that

---

Arbitration Rules R-14 (eff. Sept. 1, 2014), https://www.adr.org/sites/default/files/Consumer-Rules-Web.pdf. By incorporating AAA Rules, including Consumer Arbitration Rule R-14, into their agreement, the parties to the Uber terms "clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid," the scope of the arbitration agreement, and the arbitrability of any claim. *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (concluding that by incorporating certain AAA rules, the "the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid").

potentially provides prior express consent for the telephone calls that allegedly violate the TCPA.

In support of their argument that their TCPA claims are unquestionably not subject to arbitration, Plaintiffs rely on an unpublished Ninth Circuit opinion which concluded that a non-signatory to a wireless agreement could not rely on the wireless agreement's arbitration provision to compel arbitration of the plaintiff's TCPA claim. *Rahmany v. T-Mobile USA, Inc.*, 717 F. App'x 752, 753 (9th Cir. 2018). In *Rahmany*, the plaintiff alleged that a restaurant encouraged a wireless provider to send spam texts to its users on behalf of the restaurant in violation of the TCPA. The restaurant argued that the agreement between the wireless provider and its users permitted the communications and required arbitration of claims arising out of the wireless agreement. The Ninth Circuit panel concluded that the TCPA claim was not subject to arbitration because the claim did not rely on the terms of the wireless agreement, even though the plaintiffs alleged that the texts were sent without prior express consent and the district court would ultimately have to analyze the wireless agreement to determine if the affirmative defense of prior express consent applied. The Court is not bound by *Rahmany* and is not persuaded that the TCPA claims at issue in this action could not conceivably relate to the Uber terms to which Hobbs and Fabricant agreed.

12

Plaintiffs also cite the unpublished opinion of an Eleventh Circuit panel in *Gamble v. New England Auto Finance, Inc.*, 735 F. App'x 664 (11th Cir. 2018) (per curiam). In that case, the plaintiff had an auto loan agreement with the defendant. The loan agreement required arbitration of any claim "that in any way arises from or relates to this Agreement or the Motor Vehicle securing this Agreement." *Id.* at 665. After the plaintiff paid off her loan, the defendant began sending her text messages, and the plaintiff sued the defendant under the TCPA. The defendant argued that the TCPA claim was subject to arbitration because it had sought—in a separate agreement that the plaintiff declined to sign—permission to send the plaintiff text messages. Thus, there was not even a separate agreement between the parties on the text message issue that purportedly incorporated the loan agreement's arbitration provision. The panel concluded that the plaintiff's TCPA claim was independent of the loan agreement and did not arise of or relate to the plaintiff's loan agreement, so the parties did not agree to arbitrate those claims. In reaching this conclusion, the panel emphasized that the loan agreement was unnecessary and irrelevant to the TCPA claim because it did not contemplate potential TCPA claims. In contrast, here, the agreements that contain the arbitration provisions also contain provisions regarding Uber's collection and use of users' personal

13

information and thus at least arguably contemplate potential TCPA claims. Accordingly, *Gamble* does not require the Court to deny Uber's motion to compel arbitration.

In summary, the Court is not convinced that "it may be said with positive assurance that the arbitration clause [in the Uber terms] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650 (quoting *Warrior & Gulf Nav. Co.*, 363 U.S. at 582). Since the parties' agreements delegate "the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530. So, if Uber did not waive its right to insist on arbitration, the claims of Hobbs and Fabricant should be submitted to an arbitrator so that the arbitrator can decide whether their TCPA claims are subject to arbitration.[3]

## II. Did Uber Waive its Right to Insist on Arbitration?

Plaintiffs argue that even if the claims of Hobbs and Fabricant are arguably subject to arbitration, Uber waived its right to insist on arbitration by waiting too long to file its motion to compel. There is a strong federal policy favoring arbitration, but arbitration "should not be compelled when the party who seeks to compel arbitration has waived that right." *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th

---

[3] An arbitrator may, of course, conclude based on the evidence presented to them that the telemarketing calls to Hobbs and Fabricant had nothing to do with the Uber terms.

Cir. 2014) (quoting *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1365 (11th Cir. 1995)). A party waives its right to compel arbitration "when both: (1) the party seeking arbitration 'substantially participates in litigation to a point inconsistent with an intent to arbitrate'; and (2) 'this participation results in prejudice to the opposing party.'" *Id.* (quoting *Morewitz*, 62 F.3d at 1366). The waiver doctrine is intended "to prevent litigants from abusing the judicial process," and the party arguing for waiver "bears a heavy burden of proof" in light of the strong federal policy favoring arbitration. *Gutierrez v. Wells Fargo Bank, NA,* 889 F.3d 1230, 1236 (11th Cir. 2018). The courts generally find waiver if a defendant "elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its prospects of victory in litigation dim." *Id.* "[T]he key ingredient in the waiver analysis is fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them." *Id.* A defendant cannot "substantially invoke[] the litigation machinery" and then later demand arbitration. *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277-78 (11th Cir. 2012) (quoting

*S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).

Here, Uber's Answer and Amended Answer alerted Plaintiffs that Uber planned to argue that Plaintiffs consented to receive the communications and that members of the proposed class agreed to arbitrate their claims. Uber asserts and Plaintiffs do not dispute that Uber began requesting Plaintiffs' telephone numbers and email addresses shortly after Uber filed its answer in August 2019. Uber also asserts and Plaintiffs do not dispute that Plaintiffs did not provide their telephone numbers or email addresses to Uber until at least October 15, 2019. Thus, Uber could not have known before October 15, 2019 whether any of the Plaintiffs had entered a user agreement with Uber. Within approximately two months after receiving this information from Plaintiffs' counsel, Uber confirmed that Fabricant and Hobbs were registered Uber users and filed the motion to compel arbitration.

Plaintiffs argue that Uber substantially participated in the litigation to a point inconsistent with an intent to arbitrate because (1) Plaintiffs retained and disclosed expert witnesses on October 11, 2019 (before they provided their telephone numbers to Uber), (2) Uber filed a short notice joining another Defendant's motions to dismiss on October 18, 2019, and (3) Uber served deposition notices on Plaintiffs'

expert witnesses shortly before Uber filed its motion to compel arbitration.[4]  The Court is not convinced that these actions show that Uber substantially participated in litigation to a point inconsistent with an intent to arbitrate.  *Cf. Garcia*, 699 F.3d at 1277–78 (finding that the defendant acted inconsistently with the right to arbitrate when it participated in discovery for more than a year, conducting at least fifteen depositions and producing almost a million pages of documents).

Moreover, Hobbs and Fabricant did not explain how they were prejudiced by Uber's litigation activities during the two months after they provided their telephone numbers but before Uber filed its motion to compel arbitration.  The only activity Plaintiffs assert that Hobbs and Fabricant were personally involved in is responding to Uber's discovery request for their full telephone numbers.  There is no contention that Griffin's claims are subject to arbitration, and Griffin is represented by the same attorneys as Hobbs and Fabricant.  Plaintiffs do not argue that any expenses their lawyers incurred on Uber's litigation activities prior to the motion to compel arbitration were solely for the claims of Hobbs or Fabricant.  Rather, the present record suggests that Plaintiffs—including Griffin— jointly retained and disclosed expert witnesses and filed a

---

[4] Before Plaintiffs amended their complaint to add Uber as a defendant, their expert disclosure deadline was June 18, 2019.  After Plaintiffs added Uber as a defendant in June 2019, the parties sought and were granted an extension of the expert disclosure deadlines.

single, joint response to each of Yodel's motions to dismiss. Plaintiffs' counsel continued engaging in discovery after Uber filed its motion to compel arbitration and did not seek a stay of discovery pending the briefing or resolution of that motion. Under these circumstances, the Court does not find sufficient prejudice to establish waiver. Uber may insist on arbitration.

## CONCLUSION

For the reasons set forth above, the Court grants Uber's motion to compel arbitration of the claims of Hobbs and Fabricant (ECF No. 131). But the Court finds no special circumstances justifying a stay of Griffin's non-arbitrable claims, so it declines to stay Griffin's claims pending arbitration of the claims of Hobbs and Fabricant.

IT IS SO ORDERED, this 3rd day of March, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA